Filed 11/6/23  Saheli v. Zabeti CA4/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PARICHEHR SAHELI, | |
| Plaintiff and Respondent, | G061475 |
| v. | (Super. Ct. No. 30-2021-01213565) |
| RAMIN ZABETI, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Aaron W. Heisler, Commissioner.  Affirmed.  Respondent's request for judicial notice is denied.

Ramin Zabeti, in pro. per., for Defendant and Appellant.

Borchard & Callahan, Thomas J. Borchard, and Denise Ho for Plaintiff and Respondent.

\*          \*          \*

Defendant and Appellant Ramin Zabeti challenges the trial court's entry of an elder abuse restraining order, against him, protecting plaintiff and respondent Parichehr Saheli. Zabeti argues (1) Saheli failed to show a "past act of abuse" other than a single July 25, 2021 incident; (2) the trial court incorrectly found a violation of a temporary restraining order; and (3) the trial court incorrectly considered Zabeti's criminal history in Nevada, even though a Nevada court had ordered that criminal history sealed. We affirm the order.

FACTS AND PROCEDURAL HISTORY

Zabeti is Saheli's stepson. On July 25, 2021, Zabeti came to Saheli's home, where Zabeti's father lived with Saheli. Saheli's niece was also visiting at the time.

*Saheli's Version of Events*

According to Saheli, when she opened the door Zabeti pushed the door into Saheli, forcing her to the wall. Saheli asked Zabeti to leave, but he refused. Zabeti took his father to Zabeti's car, that was parked at the curb, put him inside the car, and locked the car. Zabeti pushed Saheli into the street, away from the car, where she fell down and hit her head. Zabeti then drove away with his father. Saheli's knee and head were injured.

*Zabeti's Version of Events*

Zabeti testified he usually was able to go inside the house when he picked up his father. When Saheli opened the door, he began walking inside and she hit him with the door. Saheli told Zabeti he was not welcome, but Zabeti had his father's permission to enter the house. Zabeti did not push the door, but rather "squeezed" into the house. Zabeti visited his father approximately four times per year. Zabeti

approached the home with his camera running, which he had not done on previous visits. He did so because Saheli was refusing to allow him to visit his father, even though he and his father had previously scheduled a visit. He did not ask Saheli for permission to videotape her or advise her that she was being videotaped.

Zabeti had scheduled a visit with his father for the previous day, July 24, but he and his siblings could not reach his father by phone that day to confirm. Zabeti spoke to his father on the morning of July 25, and his father advised Zabeti to come and pick him up. Zabeti did not leave when Saheli told him he was not welcome because if he had left, he would have had to drive back to his home in Las Vegas without seeing his father. Zabeti was concerned because of the history of conflict with Saheli, including physical abuse of Zabeti by Saheli when Zabeti was a child.

Zabeti testified Saheli attacked him outside, ramming into him, such that she bounced off and fell down. Zabeti denied being convicted of a felony, or of possession of a controlled substance.

Zabeti testified he lived with Saheli from 1984 through 1987, and that Saheli repeatedly struck Zabeti during that period. Saheli locked Zabeti in a closet and would not let him out until he called her "mommy." Zabeti saw Saheli slam the front door of their home on his father's hand, causing serious injuries. In October of 1987, Saheli slapped Zabeti in the face several times, leaving bruises around his eyes, welts on his face, and a bruise on his arm. When Zabeti went to school, the school contacted social services and Zabeti was taken into protective custody. Saheli admitted to the Anaheim Police Department that she had slapped Zabeti after Zabeti called her a bad word.

In 2020, Zabeti's father created a will and a trust. After the creation of these documents, Zabeti found it much more difficult to visit his father and believed Saheli was obstructing this visitation. Later in 2020, Zabeti's father sustained significant injuries arising from a fall, including broken ribs and a fracture of the lower back. When

3

Zabeti visited his father after these injuries, Zabeti also noticed bruising under one of his father's eyes.

Zabeti's father called Zabeti on July 23, 2021, to discuss a visit. Zabeti's father agreed to keep his cell phone powered on and properly charged, and asked Zabeti to call when he arrived in Southern California the next day, July 24, 2021. Zabeti called on July 24 and Zabeti's father's cell phone did not ring, but instead went straight to voicemail. Zabeti left a voicemail but did not receive a return call that day. The next day, July 25, Zabeti again called his father's cell phone, which again did not ring and went straight to voicemail. Zabeti next called his father's home phone, which Saheli answered. Zabeti spoke to his father, who invited Zabeti to come pick him up for a visit.

Ten minutes later, while en route to the house, Zabeti received another phone call from the home phone. This time, Saheli told Zabeti that his father had a physical therapy appointment that day, and that it was not a good day to visit. Zabeti's father also indicated he could not go with Zabeti. Zabeti replied that physical therapy appointments do not occur on Sundays, his father had requested to be picked up, and Zabeti was on his way.

Zabeti had experienced Saheli lying previously and believed Saheli might lie about the incident to come. Therefore, Saheli activated the video recording feature on his cell phone as he approached the house. Zabeti did not recall Saheli's back hitting the wall when he entered the house. Zabeti did not hear Saheli say "ow," or make any other vocalization consistent with pain. Zabeti did not perceive Saheli to be injured. Zabeti did not use his hands to open the door, but rather pushed his body between the double doors of the home.

Zabeti then saw his father, who greeted Zabeti and appeared happy to see him. Zabeti's father did not ask Zabeti to leave or express that Zabeti was not welcome. Saheli walked past and threatened to call the police. Zabeti told Saheli he was only there to pick up his father. Saheli grabbed Zabeti's father, who was wearing socks, by the hand

4

and began pulling him across the marble floor. Zabeti's father resisted by leaning back and told Saheli in Farsi to calm down. Zabeti felt Saheli's behavior created an imminent threat of injury to his father. Zabeti placed his body between Saheli and his father. Saheli then called Zabeti a "scoundrel" in Farsi.

Saheli left to the kitchen, while Zabeti's father entered his room to change clothes. Shortly thereafter, Zabeti and his father began moving toward the garage to leave the house. Saheli hurried in front of Zabeti and locked the door. Zabeti believed Saheli was behaving irrationally. Zabeti backed up and Saheli moved toward the front door. Zabeti and his father then unlocked the garage door and entered the garage. Zabeti's father put his shoes on, and Zabeti opened the garage door. Saheli told Zabeti's father in Farsi that if he left with Zabeti, Saheli would not let him back in the house. Zabeti's father replied, "Don't let me . . . back in there."

Zabeti believed at this point that his father needed, and was asking for, Zabeti's help to escape Saheli's control. Zabeti and Zabeti's father walked down the driveway toward the street. Saheli followed and tried to physically stop Zabeti's father from leaving. Saheli struck Zabeti, who pushed Saheli back with an open hand. Saheli reached for a mop and Zabeti felt threatened.

Saheli continued to strike and scratch Zabeti as he escorted his father down the driveway. Zabeti repeatedly told Saheli to stop and attempted to use the minimum force necessary to stop her. Zabeti felt he was "the only line of defense" for his father.

When Zabeti and his father reached the car, Saheli returned to the garage. Zabeti's car keys and cell phone were in his left hand, and he used his right hand to close the car door behind his father. Saheli ran down the driveway toward Zabeti and rammed her shoulders into Zabeti several times. Zabeti told Saheli to stop. On the final shoulder ramming attempt, Saheli bounced off Zabeti, whose back was against his car, and fell down. Zabeti did not use his hands to push Saheli to the ground. Saheli got up from the

5

ground and went up the driveway, then returned to the car and attempted to open the passenger side door, but it was locked. Saheli then returned to the house.

Zabeti unlocked the car door and entered the car to check on his father, who was upset. Zabeti asked if his father still wanted to leave and have lunch with Zabeti and Zabeti's brother. Zabeti's father indicated he did. Zabeti's brother returned their father to the home at around 9:00 p.m.

*Other Evidence*

Three noncontinuous videos of the event, which were taken by Zabeti on his cell phone, were introduced into evidence. A video depicting Zabeti's father at lunch later that day was also admitted. Police reports detailing Saheli's physical abuse of Zabeti in 1987 were also admitted into evidence. An Orange County Sheriff's Deputy report detailing the July 25 incident, including several photos of Zabeti's injuries, was admitted as well. Zabeti also introduced into evidence a picture of injuries to his hand. Zabeti's brother and the sheriff's deputy who investigated the incident both testified.

The trial court also took judicial notice of a judicial opinion in the State of Nevada affirming a conviction of Zabeti for possession of a controlled substance. Zabeti requested the trial court take judicial notice of a Nevada State court order to seal the record of his conviction, which permitted Zabeti to respond to "any inquiry" that the conviction did not occur.

*The Videos*

The videos of the event, which the trial court reviewed and which this court has also independently reviewed, show the following events. In the first video, a man, apparently Zabeti, approaches a house with double doors and rings the doorbell. A woman, apparently Saheli, opens the door, looks outside, then says, "You're not welcome in here," and attempts to close the door, which Zabeti appears to hold open (though the

6

video does not depict whether he is using his hands or some other part of his body to do so). Saheli says, "I'm going to call the police." Zabeti says, "Watch out," and forces his way through the gap between the double doors. Zabeti walks into the house and the camera shows another man, apparently Zabeti's father. Saheli repeats that she intends to call the police, and Zabeti replies that he is just there to see his father. Saheli grasps Zabeti's father's hand and pulls him away from Zabeti, who places his body between Saheli and his father. Saheli backs away.

In the second video, Zabeti and Saheli exchange words and Zabeti has a brief, relatively cordial conversation with a younger woman, apparently Saheli's niece. In this conversation, Zabeti describes Saheli as a "predator," and a "vulture." Zabeti then enters his father's room to help him dress and places the phone down on the bed. Zabeti and his father leave the room. A woman's voice, apparently Saheli's, can be heard speaking Farsi. Zabeti and his father walk toward a door that evidently leads into the garage. Saheli runs in front of Zabeti, saying, "Stay away from here," and locks the door, then walks back toward the front door. The sound of a door unlocking can be heard, and Zabeti and his father enter the garage. The camera begins shaking and a woman's voice, evidently Saheli's, can be heard speaking Farsi. Zabeti's arm can be seen blocking Saheli from entering the garage through the door. Saheli strikes Zabeti, who says, "Ow," and "Get off of me." Zabeti places his open hand on Saheli's upper chest to hold her back, and Saheli continues to strike Zabeti, who says, "Relax." Saheli reaches for a mop handle. Zabeti and his father proceed down the driveway. Saheli follows Zabeti and strikes him again, jostling the cell phone from his hand. Zabeti says, "What are you doing?" and "Get off of me," as Saheli grasps Zabeti's fingers. Zabeti says, "Stop," several times. Saheli says something apparently directed to Zabeti's father, and then says, apparently to Zabeti, "I don't trust you," as she returns into the garage.

7

In the third video, Zabeti is standing on the sidewalk facing the house. Zabeti's car keys can be seen in the bottom of the frame, as if held by the same hand holding the cell phone. Saheli walks down the driveway, onto the sidewalk, and approaches Zabeti. Saheli then lowers her shoulder and appears to attempt to push Zabeti away from the passenger side door of the car. Zabeti repeatedly says, "Stop," then says, "Leave him alone." Saheli initially stops, then attempts to walk around Zabeti, evidently to reach the passenger side door of the car. The camera is jostled and neither Zabeti nor Saheli are visible. A sound similar to shoes sliding on concrete can be heard, followed by a muted thumping sound, and the camera turns to show Saheli lying on the sidewalk, then standing up and walking away. Zabeti walks around the rear of the car, and a chirping sound can be heard from the car. Saheli returns toward the car and appears to attempt to open the passenger side door. Saheli calls back to the front door of the house, where someone, apparently Saheli's niece, calls back to her. Saheli walks briefly up the driveway, then turns back toward the car. Zabeti twice says, "Go inside." Saheli returns into the garage.

*The Trial Court's Decision*

After the parties submitted written closing briefs, the trial court held a hearing. The trial court denied Zabeti's request for judicial notice, and noted that even had it granted the request, it would not have reached any different conclusion. The trial court found by a preponderance of the evidence that Zabeti committed an act of elder abuse against Saheli. The trial court indicated it found neither Zabeti's nor Saheli's account of events entirely credible. Instead, the trial court indicated it found most credible the three videos, which the trial court found contradicted important parts of both Zabeti's and Saheli's testimony.

8

The trial court concluded, based on the videos and the testimony, that Zabeti used force to enter Saheli's home, by pushing the front door open while Saheli denied Zabeti entry. The trial court found Saheli was temporarily pinned between the front door and the adjacent interior door. The trial court noted that it made no difference whether Zabeti's father had given Zabeti permission to come to the home because Zabeti's father did not have the power to give Zabeti permission to force his way into the home over Saheli's objection. The trial court also found Zabeti remained in the home despite Saheli's demands that he leave, made various accusations against Saheli, and removed Zabeti's father from the home over Saheli's objections. The trial court specifically noted it did not rely on any of the physical interactions after entry to find elder abuse.

The trial court also rejected Zabeti's theory of defense of another. The trial court found no credible evidence that Zabeti believed he himself would be harmed absent his conduct. The court found Zabeti subjectively feared that Saheli was abusing his father but found that Zabeti's conduct based on that belief was unreasonable, because Zabeti had various other options to protect his father aside from forcing his way into the home.

The trial court imposed a five-year temporary restraining order and awarded attorney fees, to be determined by a subsequent noticed motion. The trial court's ruling was recorded in a minute order, in which the trial court wrote its decision was based on "the testimony regarding the violation of temporary restraining order, and review of respondent's criminal record."[1] Zabeti timely appealed.

---

[1] This minute order, from which Zabeti's appeal was taken, was not included in the record, but was attached to the civil case information sheet submitted by Zabeti. The minute order was requested in Zabeti's notice designating the record on appeal and was evidently omitted from the clerk's transcript erroneously. On the court's own motion, the record is augmented to include the minute order.

9

On appeal, Zabeti raises three arguments. First, Zabeti contends Saheli failed to show a "past act" of abuse aside from the July 25, 2021 incident. Zabeti misreads the applicable statute, Welfare and Institutions Code section 15657.03. Under subdivision (c) of that section, a protective order may be issued if a showing is made of "a past act or acts of abuse of the petitioning elder or dependent adult." The use of the word "past" in subdivision (c) of section 15657.03 refers to the act as being in the past at the time of the hearing, not that the act predates *another* act of abuse. A single act of abuse will suffice, and the trial court found that Zabeti's forced entry into the home on July 25 qualified as abuse.

Zabeti's other two contentions are best addressed together. Zabeti contends substantial evidence does not support the trial court's finding of a violation of the temporary restraining order in effect prior to the trial in this matter, and that the trial court erred in considering Zabeti's Nevada criminal history in light of the Nevada State court order sealing that history. In making these arguments, Zabeti attacks the grounds for the trial court's ruling that were recorded in the minute order.

However, neither of these grounds were the basis that the trial court gave in announcing its order from the bench. Instead, the trial court indicated that it found an act of abuse by relying principally on the three videos admitted into evidence. The trial court made no mention of a violation of any temporary restraining order and did not express any reliance on Zabeti's criminal history in making its credibility determinations. Moreover, in denying Zabeti's request for judicial notice of the Nevada State court order sealing his conviction, the trial court indicated that, even if it had taken judicial notice of the order, it would have made no difference in the outcome.

Where the trial court's oral pronouncement conflicts with a subsequent minute order, the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385; *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1260, fn. 9.) The

10

trial court's oral explanation of its reasons from the bench was clear and detailed, citing specific events, evidence, statutory and case authority, and spanning more than five uninterrupted pages of the reporter's transcript, while the minute order condenses the ruling into a single sentence containing several obvious errors.  We decline to consider the minute order an accurate statement of the trial court's reasoning.  Therefore, neither of Zabeti's latter two contentions support reversal of the trial court's order.

For the same reasons, Saheli's request that we take judicial notice of the docket of Zabeti's criminal proceedings in Nevada is denied.  Those proceedings were irrelevant to the trial court's decision, and they are equally irrelevant to this appeal.


DISPOSITION

The order is affirmed.  Saheli shall recover costs on appeal.



SANCHEZ, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.


11